UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

---

In re the bankruptcy of,

TYSON LEWIS
SSN: xxx-xx-xxxx

Case No. 14-27565-SVK-7

A debtor seeking Chapter 7 relief

---

NEIL SCHMECKPEPER,
STELLA SCHMECKPEPER,
individually and as parents of Douglas
Schmeckpeper, deceased

        Plaintiffs

vs.                              Adversary Case No. 14-xxxx

TYSON LEWIS,

        Defendant

---

ADVERSARY COMPLAINT

---

    COMES NOW the Plaintiffs, Neil Schmeckpeper and Stella Schmeckpeper, by adversary counsel, The Law Offices of Thomas J. Awen, by Attorney Thomas J. Awen, who complains the following:

    1. The Plaintiffs, collectively, are individuals who are creditors in the above entitled bankruptcy and holders of money judgment(s) arising from a findings and judgment in the Circuit Court of Milwaukee in the civil action entitled *Neil Schmeckpeper, et.al. v. Tyson J. Lewis, et.al.*, Milwaukee County Case No. 2001CV000208 with said judgment for money being duly docketed with the Clerk of Circuit Court on June 22, 2009 in the amount of $350,433.00.

    2. The Defendant, Tyson Lewis, is a debtor, as defined under Chapter 7 of Title 11, United States Code, whose last known residence is 3011 South 60th Street, City and County of Milwaukee, State and Eastern District of Wisconsin.

BACKGROUND FACTUAL ALLEGATIONS-WRONGFUL DEATH

1

## PRIOR PRECEDENT CRIMINAL PROCEEDINGS FOR HOMICIDE

3. Plaintiffs reincorporate and allege Paragraphs 1 - 2.

4. The origin of the civil action against the Debtor arose from a criminal action commenced in the Circuit Court of Milwaukee County, to-wit, *State of Wisconsin v. Tyson J. Lewis*, Case No. 1999CF000391, where the Debtor was prosecuted and convicted for Second Degree Reckless Homicide.

5. As it relates to this proceeding, in 1999, Second Degree Reckless Homicide was classified as a Crime against Life and Bodily Security under Chapter 940, Wisconsin Statutes and a person charged and/or convicted with said offense as follows: "Whoever recklessly causes the death of another human being is guilty of a Class C Felony."

6. In 1999, prior to the enactment of the Truth in Sentencing Act in Wisconsin, conviction of a Class C felony exposed a defendant up to fifteen (15) years incarceration in the Wisconsin state prison system, a fine of $10,000.00 or both.

7. In addition, any crime committed with the use of a firearm, i.e. a deadly weapon, also subjected the defendant to an additional five (5) years of incarceration in the Wisconsin state prison system.

8. As it relates to this action, on January 21, 1999 in the City of Milwaukee, County of Milwaukee and Eastern District of Wisconsin , police officers of the Milwaukee Police Department (hereinafter referred to as "MPD") were dispatched to reports of a shooting at 1027 South 29th Street. Upon arrival, they discovered the non-responsive body of a 17-year old boy by the name of Douglas Schmeckpeper, the teenage son of the Plaintiffs.

9. Upon due examination at the scene and confirmed by an autopsy conducted by the Milwaukee County Medical Examiner, Douglas Schmeckpeper sustained a gunshot wound, at fairly close range, under the left eye of his face. Said bullet passed through the boy's head and exited out the rear of the head. Said injuries killed Douglas Schmeckpeper.

10. A subsequent investigation conducted by the Milwaukee Police Department, which included but not limited to the interview of witnesses and examination of physical evidence, led the police to focus on the Debtor, Tyson Lewis, as the principal suspect responsible for the death of Douglas Schmeckpeper.

11. The subsequent investigation determined that Tyson Lewis, in the presence of Douglas Schmeckpeper, produced a loaded .357 caliber black handgun and manipulated the firearm in such a fashion to pose a danger to all those present, including Douglas Schmeckpeper.

12. Upon information and belief, Tyson Lewis knew that the .357 caliber handgun was loaded and that if fired, would and could inflict grievous bodily harm or death to any person(s)

2

hit with a bullet from said handgun.

13. Upon information and belief that Tyson Lewis pointed the loaded .357 caliber handgun at Douglas Schmeckpeper and that only a distance of 3-4 feet separated the two individuals with nothing obstructing the path of any bullet fired from said handgun.

14. Upon information and belief that Douglas Schmeckpeper repeatedly waved his arms and gestured to the Debtor to not point the loaded .357 caliber handgun at him.

15. Upon information and belief that the Debtor refused to comply with Douglas Schmeckpeper's request and in fact continued to point the loaded .357 caliber handgun directly at Douglas Schmeckpeper.

16. Upon information and belief that Tyson Lewis, in complete control of the loaded .357 caliber handgun, discharged the weapon in the direction of Douglas Schmeckpeper.

17. Upon information and belief, the aforementioned handgun, in the custody and control of Tyson Lewis, discharged a .357 caliber bullet which came out of the barrel of said handgun struck and killed Douglas Schmeckpeper.

18. Upon information and belief, that the Debtor, after determining that he had killed Douglas Schmeckpeper, made a number of spontaneous declarations including "He's dead" (referring to Douglas Schmeckpeper), "Oh my God" and "You can't tell anyone".

19. Upon information and belief Tyson Lewis had knowledge that he knew the .357 caliber handgun was loaded because he was the one who loaded the weapon.

20. Upon information and belief that the Debtor made declarations that an unknown black person, entered the Schmeckpeper residence and without provocation shot and killed Douglas Schmeckpeper.

21. Upon information and belief the Debtor made said declarations, about an unknown black shooter, in an effort to dispel suspicion and prevent discovery that the Debtor himself had shot and killed Douglas Schmeckpeper.

22. Upon information and belief that the Debtor, in making unsworn declarations to other people, claimed that he examined the cylinder to the .357 caliber handgun (revolver) and saw that the weapon still loaded before he shot Douglas Schmeckpeper.

23. Upon information and belief, with the foreknowledge that by pulling the trigger to the .357 caliber handgun, the cartridge would slide into the firing chamber, Tyson Lewis pulled the trigger of said handgun while pointing it at Douglas Schmeckpeper with the knowledge that the gun would fire and discharge its bullet.

3

24. Upon information and belief, the Debtor may have been under the influence of drugs and/or alcohol, of which said intoxicating substances could affect the ability to safely control a loaded firearm and may have impaired his ability to safely control the firearm.

25. Upon information and belief, with the foreknowledge that firing a .357 caliber handgun with a loaded and primed cartridge can inflict grievous bodily harm and death, Tyson Lewis pulled the trigger to said handgun wilfully and maliciously.

26. Upon information and belief, with the foreknowledge that only 3 to 4 feet separated Tyson Lewis and Douglas Schmeckpeper, the likelihood that a bullet from a discharged firearm would hit, grievously injure or kill Douglas Schmeckpeper was a certain probability to happen.

27. Upon information and belief, Tyson Lewis, accompanied by retained counsel, met with detectives of the Milwaukee Police Department on January 23, 1999 at the Police Administration Building, 749 West State Street, City and County of Milwaukee, Eastern District of Wisconsin where the Debtor surrendered himself into police custody.

28. Upon information and belief the Debtor, with the foreknowledge that the police would be looking for him, evaded and eluded the police for several days while the police actively looked for him.

29. Upon information and belief, the Debtor surrendered to the police (MPD).

30. Upon information and belief, on January 26, 1999, Debtor's criminal defense counsel surrendered to MPD custody the aforementioned .357 caliber handgun which was determined to be a Smith & Wesson .357 caliber magnum, six shot revolver, blue steel with a serial number of AYU5337.

31. Upon information and belief, the aforementioned .357 caliber handgun, which was used to kill Douglas Schmeckpeper, was reported stolen from the City of Sheboygan.

32. Upon information and belief, Tyson Lewis knew that the aforementioned .357 caliber handgun was either stolen or acquired illegally and not purchased legitimately from a licensed firearms dealer.

26. On January 26, 1999 the District Attorney for Milwaukee County issued a criminal complaint charging the Debtor with Second Degree Reckless Homicide, while armed with a dangerous weapon, contrary to Wis. Stat. Sec. 940.06 (1), 939.63 in the case entitled *State of Wisconsin v. Tyson J. Lewis,* Milwaukee County Case No. 99CF000391.

27. On February 16, 1999 the Debtor plead guilty to the charge of Second Degree Reckless Homicide, in open court, before the Honorable Elsa LaMelas, Circuit Court Judge.

28. On March 11, 1999 the Debtor was sentenced in an indeterminate term of fifteen

(15) years in the Wisconsin State Prison system for the murder of Douglas Schmeckpeper.

29. Said Debtor was remanded into the custody of the Wisconsin Department of Corrections and was duly incarcerated until ultimately released, subject to parole supervision.

30. Upon information and belief, and as of the date of this complaint, the Debtor is no longer under the supervision of the Wisconsin Department of Corrections.

PRIOR CIVIL WRONGFUL DEATH LAWSUIT PROCEEDINGS FOR DAMAGES

31. The Plaintiffs reincorporate Paragraphs 1 -30.

32. The Plaintiffs commenced a civil lawsuit against the Debtor for wrongful death and loss of association in the civil action entitled *Neil and Stella Schmeckpeper v. Tyson Lewis, et.al.,* and subsequently took judgment against the Debtor.

33. Under the existing laws of the State of Wisconsin, specifically Wis. Stat. Sec. 895.04, the Plaintiffs took judgment for the sum of $350,000.00 plus costs as provided under the law for the loss of society and companionship to the parents of the deceased.

34. Said lawsuit was prosecuted in civil term court arising from the criminal actions of the Debtor which led to the discharge of the firearm and which subsequently killed the Plaintiffs' son.

35. Said lawsuit sought recovery of money damages, pursuant to Wisconsin's wrongful death laws, from the Debtor for the Plaintiff's loss of society and companionship of Douglas, their son.

36. The Debtor, by his wilful and malicious conduct, without regard for human life and safety, deprived the Plaintiffs of their son, Douglas who was only 17 years old at the time of his death.

37. But for the Debtor's wilful and malicious conduct, in the operation of a loaded firearm without regard for human life and safety, while handling (or mis-handling) of a firearm, directly led to the death of the Plaintiff's son.

38. But for the Debtor's actions in killing Douglas Schmeckpeper, Douglas would have lived at least another sixty-years, under information and belief. The loss of association and society is uncalculable but at the time of Douglas' death he was a junior at Milwaukee Trade & Technical High School with a 2.5 grade point average and, but for the Debtor's actions which led to Douglas' death, would have most likely become an electrician or other trade.

39. But for the Debtor killing Douglas Schmeckpeper, and upon information and belief, Douglas would have married and procreated children which would have made the Plaintiffs

grandparents.

40. Said civil finding of wrongful death remains of record and binding and has not been overturned by appeal.

## JURISDICTION AND CLAIM

41. This is a Core Proceeding as defined under Title 28, U.S.C. Section 157 (I).

42. The United States Bankruptcy Court has jurisdiction over this case pursuant to Title 28, U.S.C. Section 1334 (b), (c).

43. That the Defendant/Debtor engaged in wilful and malicious injury to the Plaintiffs, to-wit, the reckless homicide of the Plaintiffs' son and the loss of society and association, contrary to Title 11, U.S.C. Section 523 (a) 6.

44. That the Defendant/Debtor actions, by manipulating and discharging the firearm at the Plaintiffs' son was wilful.

45. That the Defendant/Debtor actions, by pulling the trigger of the firearm in the direction of the Plaintiff's son was malicious.

WHEREFORE, the following relief is requested:

A. That the Court either conduct a hearing as to determine whether or not the money judgment arising from the wrongful death of the Plaintiff's son by the Debtor is nondischargeable under Section 523 (a) of the U.S. Bankruptcy Code; or

B. That the Court enter a declaratory finding that the judgment is nondischargeable pursuant to 11 U.S.C. Section 523 (a) (6) or any other provision of Section 523.

C. In the alternative, that the Court enter a money judgment equal to the accrued balance of the judgment at the date of filing in the amount of $533,227.45.

Dated this __2nd__ Day of __September__, 2014 at Milwaukee, Wisconsin.

                                              __S/ Thomas J. Awen__
                                              Thomas J. Awen, Esq.
                                              State Bar No. 1000602

The Law Offices of Thomas J. Awen
740 N. Plankinton Avenue
Suite 530
Milwaukee WI 53203
Telephone: (414) 276-6900
Facsimile: (414) 226-2050
E-mail: tawen@execpc.com


CLIENT VERIFICATION
This document has been reviewed by the Plaintiffs and approve of its contents as to filing

|  8/25/14  |  s/ Neil Schmeckpeper  |
|---|---|
| Date | Neil Schmeckpeper |

|  8/25/14  |  S/ Stella Schmeckpeper  |
|---|---|
| Date | Stella Schmeckpeper |


This electronic version mirrors the original signed copy retained by counsel in his files.